USDC SCAN INDEX SHEET

















LLH   6/8/00   8:54

3:99-CR-03465   USA V. ZAPIEN-CARRILLO

*66*

*CRTRLMEM.*

ORIGINAL

GREGORY A. VEGA
United States Attorney
ROOPAL R. SHAH
Assistant U.S. Attorney
California State Bar No. 181323
Federal Office Building
880 Front Street, Room 6293
San Diego, California  92101-8893
Telephone: (619)557-6760

FILED

00 JUN -7 PM 3: 44

DEPUTY

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No. 99cr3465-JM-01 |
| | ) | |
| Plaintiff, | ) | |
| | ) | DATE:   June 13, 2000 |
| v. | ) | TIME:   9:00 a.m. |
| | ) | |
| ALFONSO ZAPIEN-CARRILLO (1), | ) | **GOVERNMENT'S TRIAL MEMORANDUM** |
| | ) | |
| Defendant. | ) | |
| | ) | |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Gregory A. Vega, United States Attorney, and Roopal R. Shah, Assistant United States Attorney, and hereby files the attached trial memorandum.

//
//
//
//
//
//
//
//
//

6 6

1                                                    I

2                                STATEMENT OF THE CASE

3          A.    INDICTMENT

4          On December 7, 1999, the Grand Jury returned a fourteen-count

5    indictment against six defendants including Defendant Alfonso Zapien-

6    Carrillo (hereinafter "Defendant" or "Zapien").   That indictment

7    alleges a conspiracy to bring in, transport, and harbor illegal aliens

8    as well as specific individual instances of bringing in illegal aliens

9    for financial gain, transporting, and harboring illegal aliens.

10         B.    TRIAL STATUS

11         A jury trial for Defendant Zapien is set for Tuesday, June 13,

12   2000 at 9:00 a.m. before the Honorable Jeffrey T. Miller.   The

13   Government expects the trial to last approximately 3-4 days.

14         C.    CUSTODY

15         Defendant is out on bond pending trial.

16         D.    INTERPRETER

17         The Defendant will require a Spanish interpreter for trial.

18   Three Government witnesses are Spanish-speaking, and will also require

19   an interpreter for trial.

20         E.    DEFENSE COUNSEL

21         Robert Carriedo, Esquire, represents the Defendant.

22         F.    PRETRIAL MOTIONS

23         On May 22, 2000, the Government filed motions in limine to

24   admit expert testimony, to admit statements of alienage, and to

25   prohibit reference to punishment.   To date, Defendant has not filed

26   any motions in limine.   The motions in limine hearing is June 5, 2000,

27   at 2 p.m.

28

II

STATEMENT OF FACTS

This is a case about an alien smuggling organization which has two known bases in San Diego: an administrative house at 3104 Ocean View Boulevard, San Diego, California ("Ocean View house") and a load house at 506 East Division Street, National City, California ("Division house").  This organization operates from the Hotel Guadiana in Tijuana, Mexico.  From there, undocumented aliens are either smuggled across the border at the Port of Entry or shepharded through the hills in East San Diego County.  The smugglers take the undocumented aliens to the Division house until they can be delivered to their sponsors for the smuggling fee. Defendant is one of the leaders of the organization.  Defendant's role is primarily behind the scenes – Defendant works with the undocumented aliens in Mexico to facilitate their crossing into the United States; Defendant also helps to coordinate the transportation of the undocumented aliens once they have crossed into the United States.

There are several dates of activity that are noteworthy to the conspiracy and Defendant's role in it.

A.   **October 15, 1999**

On October 15, 1999, agents followed a green 1987 Isuzu Trooper, California license plate 4ECF127 ("green Trooper") and a silver Lincoln sedan, California license plate 1RKY865 ("silver Lincoln") as they drove in tandem from the Ocean View house toward the Live Oaks Spring area in East San Diego County.  At approximately 11:10 a.m., Agents observed the green Trooper and silver Lincoln leave the Live Oaks Spring area and drive back west

3

1 | on Interstate 8. The green Trooper appeared heavily laden and was
2 | visibly lower than previously observed. Agents followed the
3 | vehicles as they exited onto Kitchen Creek road and traveled
4 | northbound. At approximately 1:30 p.m., the green Trooper arrived
5 | at the Division house. Agents watched a Hispanic male exit the
6 | East Division drop house from the side entrance and open the side
7 | gate. That individual provided direction as approximately 10 to 11
8 | people exited the green Trooper and walked single file, in a
9 | hurried manner, into the Division house. Several of the occupants
10 | were carrying small travel bags or backpacks. The appearance and
11 | mannerisms of these individuals are consistent with that of illegal
12 | aliens who are being smuggled into the United States.

13 | On the same date, at approximately 10:35 AM, Agents observed
14 | a blue and white 1979 Ford Chateau van, California license plate
15 | 5T00361 ("blue and white van") arrive at the Division house.
16 | Agents watched a Hispanic male exit the East Division drop house
17 | from the side entrance and open the side gate. That individual
18 | provided direction as approximately 26-27 people exited the blue
19 | and white Ford van in a single file line, and walked into the
20 | Division house in a hurried manner and hunched over as if
21 | attempting to conceal themselves. Several of the occupants were
22 | carrying small travel bags or backpacks. The appearance and
23 | mannerisms of these individuals are consistent with that of illegal
24 | aliens who are being smuggled into the United States.

25 | B. **October 21, 1999**

26 | On October 21, 1999, while stationary at the intersection of
27 | Old Highway 80 and Buckman Springs Road in a fully marked service
28 | vehicle, Border Patrol agents observed the green Trooper

4                                                      99cr3465-JM-01

1  (California license plate 4ECF127) stop twenty feet short of the
2  stop sign; the green Trooper moved forward a few feet and stopped
3  again.  The green Trooper came to a complete stop at the stop sign
4  and remained there for several minutes as if the driver was
5  unwilling to pass the Border Patrol unit.  Finally the vehicle
6  turned westbound on Old Highway 80.  Agents noticed that although
7  only two occupants were visible, the vehicle bounced and swayed as
8  if it were hauling a heavy load; the vehicle also had difficulty
9  staying on the road around the bends.  Agent Cotsworth performed a
10  record check on the vehicle and discovered that the license plate
11  "4ECF127" belonged to a 1986 Jaguar.  Agents stopped the vehicle
12  and discovered 5 persons attempting to conceal themselves in the
13  back of the vehicle.  Agents questioned all 7 individuals regarding
14  their citizenship and legal status in the United States.  All of
15  them admitted to being undocumented aliens with no legal documents
16  to enter the United States.

17              C.   **November 17, 1999**

18       On November 17, 1999, at approximately 8:30 a.m. Agents
19  observed a blue Pathfinder California license plates 4GWC305 at the
20  Ocean View house.  Shortly thereafter, Agents observed the
21  Pathfinder depart from the Ocean View house and travel eastbound on
22  Interstate 8 in tandem with a red Geo Storm.  At 9:45 a.m., Agents
23  observed the blue Pathfinder arrive at the side gate of the
24  Division house.  Agents observed 8-9 suspected undocumented aliens
25  exit the Nissan Pathfinder and enter the Division house.  At
26  approximately 11:10 a.m., agents observed a white sports utility
27  vehicle drop off approximately 6-8 more suspected undocumented
28  aliens at the Division house.

1        At approximately 12:45 p.m., Agents observed co-defendants

2  Martin Martinez and Vinicio Zago-Berra transport two undocumented

3  aliens, Jose Guadalupe Alonso Morales and Maria Aydee Cantu, from

4  the Division house to an apartment complex on Winona Avenue in San

5  Diego, California.  At that location, Martin Martinez and Vinicio

6  Zago-Berra collected $1600 in exchange for delivering Jose

7  Guadalupe Alonso Morales and Maria Aydee Cantu.  Agents arrested

8  all four people.  The two undocumented aliens stated that they made

9  arrangements with the Defendant to be smuggled into the United

10  States.  Their sponsor, Jose Luis Alonso Morales, indicated that

11  immediately preceding the delivery of his relatives,  Jose

12  Guadalupe Alonso Morales and Maria Aydee Cantu, he received a call

13  from a woman at phone # 619-339-3559 asking for his address and

14  whether he had the money ready for his relatives.

15        Both Jose Guadalupe Alonso Morales and Maria Aydee Cantu

16  picked Defendant out a of photo line-up and identified him as "El

17  Chivero," the person at the Hotel Guadiana who spoke to them about

18  the manner of crossing into the United States and payment.

19        Also on November 17, 1999, agents executed search warrants at

20  both the Ocean View and the Division houses.  On that date, at the

21  Division house, agents discovered 13 undocumented aliens at the

22  Division house, a business card for the Hotel Guadiana, and alien

23  smuggling ledgers.  At the Ocean View house, agents found titles

24  for numerous vehicles, cash payment receipts for utility bills, and

25  alien smuggling ledgers.  Agents arrested 4 individuals on alien

26  smuggling charges, and 13 undocumented aliens for being in the

27  United States without proper documentation.

28        Several days later,  pursuant to an arrest warrant, agents

1 arrested Defendant at an apartment complex located at 2204 Euclid
2 Avenue, San Diego, California.  In Defendant's belongings at the
3 time of his arrest were identification cards, a number of business
4 cards with phone numbers written on the back, a receipt from
5 Daniel's Jewelers, and a pay-stub from Patrick David's Catering in
6 Danville, California.  Also in the Defendant's belongings was a
7 Sprint PCS cellular phone [619-254-0175].  That cell phone was used
8 to call the Ocean View house, the Division house and the Hotel
9 Guadiana.

10                                III

11                             WITNESSES

12          The Government anticipates calling the following witnesses
13 in its case-in-chief.  The Government may call additional witnesses
14 if trial testimony makes it necessary.

15          1.   George Gale, United States Border Patrol

16          2.   Brian Manaher, United States Border Patrol

17          3.   Robert Senior, United States Border Patrol

18          4.   Juan Estrada, Special Agent, United States Border Patrol

19          5.   Robert Rodgers, United States Border Patrol

20          6.   Adrian Cotsworth, United States Border Patrol

21          7.   Frank Scharff, United States Border Patrol

22          8.   Victor Cardenas, United States Border Patrol

23          9.   Custodian of Records - Pacific Bell Telephone

24          10.  Custodian of Records - Daniel's Jewelers

25          11.  Patrick David

26          12.  Marta A. Palanco

27          13.  Saul Synder

28          14.  Jose Guadalupe Alonso Morales

1    15.   Jose Luis Alonso Morales

2    16.   Maria Aydee Cantu Regalado

3    17.   Martha Rodriguez Paz

4    18.   Immigration Inspector David Vasquez

5                               IV

6                            EXHIBITS

7         An exhibit list will be provided on the day of trial.

8                               V

9                         PERTINENT LAW

10   A.   TITLE 8, UNITED STATES CODE, § 1324(a)(1)(A)(v)(I)

11        The elements for conspiracy to bring in, transport, and harbor

12   illegal aliens are as follows:

13             1.   First, beginning on a date unknown and ending on or
                    about November 17, 1999, there was an agreement
14                  between two or more persons to commit at least one
                    crime as charged in the indictment;
15
               2.   Second, the Defendant became a member of the
16                  conspiracy knowing of at least one of its objects and
                    intending to help accomplish it;
17
               3.   Third, one of the members of the conspiracy performed
18                  at least one overt act for the purpose of carrying
                    out the conspiracy, with all of the jurors agreeing
19                  on a particular overt act that was committed.

20   B.   TITLE 8, UNITED STATES CODE, § 1324(a)(2)(B)(ii)

21        The elements for bringing in illegal aliens for financial gain
     as charged in Counts 3,5, 7, 9, 12 are as follows:
22
               1.   First, the person specified in the count was an
23                  alien;

24             2.   Second, the person specified in the count had not
                    received prior official authorization to come to,
25                  enter, or reside in the United States;

26             3.   Third, Defendant knew [or was in reckless disregard
                    of the fact] that the person specified in the count
27                  had not received prior official authorization to come
                    to, enter, or reside in the United States;
28

                               8                    99cr3465-JM-01

4.  Defendant knowingly brought the person specified in the count into the United States for the purpose of commercial advantage and private financial gain.

5.  Defendant acted with intent to violate the United States immigration laws. <u>United States v. Barajas</u>, 183 F.3d 947(9th Cir. 1999).

C.  <u>TITLE 8, UNITED STATES CODE, § 1324(a)(1)(A)(ii)</u>

The elements of transporting illegal aliens as charged in Counts 4,6 8, 10, and 13 are:

1.  First, the person specified in the count was an alien;

2.  Second, the person specified in the count was not lawfully in the United States;

3.  Third, Defendant knew that the person specified in the count was not lawfully in the United States; and

4.  Defendant knowingly transported or moved the person specified in the count in order to help them remain in the United States illegally.

D.  <u>TITLE 8, UNITED STATES CODE, § 1324(a)(1)(A)(iii)</u>

The elements of harboring illegal aliens as charged in Counts 2, 11, and 14 are:

1.  First, the person specified in the count was an alien;

2.  Second, the person specified in the count had come to, entered, or remained in the United States in violation of law;

3.  Third, Defendant knew that the person specified in the count had come to, entered, or remained in the United States in violation of law; and

4.  Fourth, Defendant knowingly concealed, harbored, or shielded from detection the person specified in the count or attempted to conceal, harbor, or shield from detection such persons.

VI

STIPULATIONS

The parties may stipulate to the authenticity of the phone records subpoenaed from Pacific Bell/Sprint PCS for three phone

1 numbers, and to the subscriber information for each phone number.

2                                    VII

3                      ANTICIPATED LEGAL ISSUES

4    **A.    Defendant's Prior Arrest for Alien Smuggling Should be
            Admitted as 404(b) Evidence**

5
     Defendant's prior arrest on June 13, 1997 with 29 undocumented

6    aliens at 506 E. Division should be admitted as Rule 404(b) evidence

7    to show knowledge, intent, and absence of mistake.

8
     Rule 404(b) of the Federal Rules of Evidence permits evidence

9    of other acts to show, among other things, knowledge, intent,

10   preparation, and lack of mistake.   Rule 404(b) is a "rule of

11   inclusion," and evidence of other acts is admissible "except where it

12   tends to prove *only* criminal disposition."   United States v. Ayers,

13   924 F.2d 1468, 1472-73 (9th Cir. 1991)(emphasis in the original).  The

14   test for admissibility under Rule 404(b) consists of the following

15   four parts: (1) it must be based upon sufficient evidence; (2) it must

16   not be too remote in time from the charged crimes; (3) it must bear

17   some similarity to the charged crimes; and (4) it must prove an

18   essential element of the charged offense.   United States v. Melvin,

19   91 F.3d 1218, 1222 (9th Cir. 1996).

20   Defendant's June 1997 arrest for alien smuggling meets all four

21   parts of the Melvin test.

22   First, the Government expects to call the Border Patrol Agents

23   who arrested Defendant on June 13, 1997 to testify as to Defendant's

24   presence at the Division house and his attempt to flee upon seeing

25   agents.   These events occurred in June 1997, a little over two years

26   before the investigation in the instant case commenced.

27   The factual similarities establish a common modus operandi, and

28

                                      10                99cr3465-JM-01

1  help refute a mistake defense and/or any claims that Defendant lacked
2  knowledge or intent.

3      The evidence tends to prove intent and knowledge of the use of
4  the Division house to harbor undocumented aliens, an element of the
5  harboring and conspiracy offenses with which Defendant is charged;
6  furthermore, this evidence refutes any possible claim by the Defendant
7  that he is unaware of the activities that transpired at the Division
8  house.  For these reasons, Defendant's June 13, 1997 arrest should be
9  admitted as 404(b) evidence.

10      **B.     Summary Analysis of Phone Records Should be Admitted**

11      Pursuant to Federal Rules of Evidence 1006, the United States
12  intends to introduce a chart summarizing phone tolls on Defendant's
13  Sprint PCS cellular phone, on co-conspirator Silvestre Rivera's Sprint
14  PCS cellular phone, and on the Ocean View house phone.  See United
15  States v. Meyers, 847 F.2d 1408, 1412(9th Cir. 1988) (upholding
16  admission of exhibit summarizing record of long distance phone calls
17  of various co-conspirators).

18      Rule 1006 states:

19      The contents of voluminous writings, recordings, or photographs
       which cannot conveniently be examined in court may be presented
20     in the form of a chart, summary, or calculation.  The
       originals, or duplicates, shall be made available for
21     examination or copying, or both, by other parties at reasonable
       time and place.  The court may order that they be produced in
22     court.

23  Fed. R. Evid. 1006 (2000).

24      In the instant case, the United States intends to introduce
25  hundreds of pages of phone records relevant to the case.  The
26  underlying phone records are admissible but too voluminous to be
27  "conveniently examined in court."  For this reason, the United States
28  also intends to introduce a chart showing that during the period of

1  May 23, 1999 and November 23, 1999, Defendant's Sprint PCS telephone
2  [619-254-0175] received a total of 21 incoming calls and 1388 outgoing
3  calls.  276 calls were made from that telephone to the Ocean View
4  house [619-233-5339].  98 calls were made to the Division house [619-
5  477-6403] .  50 calls were made to the Hotel Guadiana in Tijuana,
6  Mexico [011-52-66-88-33-48].

7       During that same period, the Ocean View phone [619-233-5339]
8  recorded 182 incoming calls and 1823 outgoing calls.  264 calls were
9  made to the Hotel Guadiana in Tijuana, Mexico [011-52-66-88-33-48];
10  220 calls were made to the Ocean View phone voicemail system; 16 calls
11  were made to the Division house [619-477-6403]; 9 calls were made to
12  Defendant's Sprint PCS telephone [619-254-0175].

13       During the period of July 30, 1999 to November 12, 1999, records
14  for Silvestre Rivera's PCS telephone [619-368-5945] indicate that
15  there were a total of zero (0) incoming calls and 1431 outgoing calls.
16  377 calls were made to the Division house [619-477-6403], and 329
17  calls were made to Ocean View house [619-233-5339].

18       In conclusion, because of the voluminous nature of these phone
19  records, a chart summarizing such records should be admitted into
20  evidence.
21  //
22  //
23  //
24  //
25  //
26  //
27  //
28

VIII.

JURY INSTRUCTIONS

The Government will file proposed jury instructions separately. The Government reserves the right to submit additional instructions at the Rule 30 conference.

DATED: May 30, 2000.

Respectfully submitted,

GREGORY A. VEGA
United States Attorney

ROOPAL R. SHAH
Assistant U.S. Attorney

13                                    99cr3465-JM-01

UNITED STATES OF AMERICA

SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,      ) Criminal Case No. 99cr3465-JM
                               )
                  Plaintiff,   )
        v.                     )
                               )
ALFONSO ZAPIEN-CARRILLO,       )   **CERTIFICATE OF**
                               )   **SERVICE BY U.S. MAIL**
                  Defendant.   )
                               )
_____)

IT IS HEREBY CERTIFIED THAT:

I, Tammy M. McFadden, am a citizen of the United States over the age of eighteen years and a resident of San Diego County, California; my business address is 880 Front Street, San Diego, California 92101-8893. I am not a party to the above-entitled action; and subsequent to filing with the Clerk of the Court, I have deposited in the United States mail at San Diego, California, a copy of the following: **Government's Trial Memorandum** address to:

        ROBERT CARRIEDO, ESQ.
        105 "W" F. STREET, STE. 203
        SAN DIEGO, CA 92101-6036

I declare under penalty of perjury that the foregoing is true and correct. Executed on this **7th day of June, 2000.**

                                _____
                                TAMMY M. MCFADDEN